IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                          No. CR 04-1433

JOSE NATIVIDAD VALENZUELA-PUENTES,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Government's motion to involuntarily medicate Defendant pursuant to the Supreme Court's ruling in *Sell v. United States*, 539 U.S. 166 (2003). Having reviewed the submissions of the parties and the relevant law, I will **GRANT** the Government's motion.

### I. Background.

The Government charged Jose Valenzuela-Puentes ("Mr. Valenzuela") with Illegal Reentry of a Previously Deported Felon in violation of 8 U.S.C. § 1326(a)(1), (2) and 8 U.S.C. § 1326 (b)(2) on August 6, 2003. (United States' Second Resp. to Def.'s Mot. to Dismiss, at 1.) Magistrate Judge Leslie C. Smith found Mr. Valenzuela mentally incompetent to stand trial and ordered further psychiatric examinations on November 14, 2003. (Doc. No. 11.) Dr. Bruce Capehart ("Dr. Capehart") evaluated Mr. Valenzuela over a four-week period at a federal medical center in Butner, North Carolina and issued a report on April 7, 2004, in which Dr. Capehart found Mr. Valenzuela incompetent to stand trial. (Def.'s Mem. in Resp. to Government's Mot. to Involuntarily Medicate Def., at 3.) On August 24, 2004, this Court denied Mr. Valenzuela's motion to dismiss, with prejudice, the charges against him. (Doc. No. 34.) In doing so, this

Court ruled that Mr. Valenzuela's seven month hospitalization was not unreasonable within the meaning of 18 U.S.C. § 4241 and did not violate Rule 48(b) of the Federal Rules of Criminal Procedure. *Id.*

On September 27, 2004, this Court held a hearing on the Government's motion to involuntarily medicate Mr. Valenzuela pursuant to the Supreme Court's recent holding in *Sell v. United States*, 539 U.S. 166 (2003). Dr. Capehart diagnosed Mr. Valenzuela with "psychotic disorder not otherwise specified." (Test. Dr. Capehart.) Dr. Capehart also testified that there is a substantial probability that the administration of antipsychotic medications would render Mr. Valenzuela competent to stand trial. According to Dr. Capehart, however, the Government could not restore Mr. Valenzuela to competency through any less intrusive means. (Test. Dr. Capehart.) Both Dr. Capehart and defense witness, Dr. Abraham Fiszbein, admitted they prescribed antipsychotic medication to their patients and acknowledged the potential side-effects of the drugs. These possible side effects include the onset of diabetes, obesity, tardive dyskinesia, and a variety of other muscular and cognitive impairments. (Test. Dr. Capehart; Test. Dr. Fiszbein.) Moreover, the doctors agree that Mr. Valenzuela does not present a danger to himself or others. So far, Mr. Valenzuela has refused to take any medication.

**II. Analysis.**

### A. *Sell v. United States.*

Pursuant to *Sell v. United States*, 539 U.S. 166 (2003), in a hearing on the government's motion to involuntarily medicate a defendant to render the defendant competent to stand trial the Court must conclude that: 1) *important* governmental interests are at stake; 2) involuntary medication will *significantly further* those interests; 3) involuntary medication is *necessary* to further those governmental interests; and 4) administration of antipsychotic drugs is *medically*

2

*appropriate*, that is, in the patient's best medical interests in light of his medical condition. *Id.* at 180-81.

### B. Weighing the *Sell* factors.

First, the Court must consider that the "Government's interest in bringing to trial an individual accused of a serious crime is important." *Id.* at 180. In addition, *Sell* noted that "[t]he government has a substantial interest in timely prosecution" as well as a "constitutionally essential interest in assuring that the defendant's trial is a fair one." In this case, the Government possesses an important interest in the timely prosecution of Mr. Valenzuela, who the Government charged with Illegal Reentry of a Previously Deported Felon in violation of 8 U.S.C. § 1326(a)(1), (2) and 8 U.S.C. § 1326 (b)(2). *Sell* recognized the Government's important interest in trying individuals accused of a serious crime. *Sell*, 539 U.S. at 180. Moreover, in order to ensure a fair trial the defendant must be competent, that is, able to assist his attorney in his own defense. Forcibly medicating Mr. Valenzuela will restore him to competency and allow him to assist counsel in his defense. The Government, therefore, has demonstrated an important interest in this case and this factor weighs in favor of the Government.

Second, the Court must conclude that "administration of the drugs is substantially likely to render the defendant competent to stand trial." *Sell*, 539 U.S. at 181. Dr. Capehart testified, without dispute, that the administration of antipsychotic medication to Mr. Valenzuela is substantially likely to render him competent to stand trial. The Court must also find, however, that "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Sell*, 539 U.S. at 181. The potential side effects to antipsychotic

3

drugs are well documented and include: acute dystonia, a severe involuntary muscle spasm of the upper body, tongue, throat, or eyes; akathesia, which involves motor restlessness often characterized by an inability to sit still; neuroleptic malignant syndrome, which in rare cases can cause death by heart dysfunction; salivation; and tardive dyskinesia, a neurological disorder characterized by involuntary, uncontrollable movements of various muscles, especially around the face that affects 10% to 25% of patients treated with antipsychotic drugs. *See Riggins*, 504 U.S. 127, 134 (1992); *Harper*, 494 U.S. 210, 229-30, 240 (1990). Both Dr. Capehart and Dr. Fiszbein testified that the antipsychotic medication Mr. Valenzuela would receive can also cause diabetes and obesity.

These side effects can prejudice a defendant in at least two significant ways: "(1) by altering his demeanor in a manner that will prejudice his reactions and presentation in the courtroom, and (2) by rendering him unable or unwilling to assist counsel." *Riggins*, 504 U.S. at 142 (Kennedy, J., concurring). Since Mr. Valenzuela's medical history is unknown, it is difficult to predict what, if any, side effects he would exhibit. (Test. Dr. Capehart.) Both Dr. Capehart and Dr. Fiszbein testified that, in spite of the possibility of side effects, they regularly prescribe various types of antipsychotic medications to their patients to deal with their psychoses. While these drugs may generally have the potential to cause a variety of side effects, Mr. Valenzuela offered no evidence suggesting that he was particularly susceptible to any of them. The undisputed evidence presented from doctors called as witnesses by both the Government and Mr. Valenzuela was to the affect that they would prescribe antipsychotic medication to Mr. Valenzuela to treat his psychotic disorder and that these drugs would likely restore Mr. Valenzuela to competency. Administering medication to Mr. Valenzuela, therefore, would significantly further the Government's interest in prosecuting him for his crime because

4

administering the drugs would likely render Mr. Valenzuela competent to stand trial. This factor favors the Government.

Third, in determining if involuntary medication is necessary to further the governmental interests at stake the Court must find that "less intrusive means for administering the drugs, e.g., a court order to the defendant backed by the contempt power," would not render Mr. Valenzuela competent to stand trial. *Sell*, 539 U.S. at 181. Dr. Capehart's undisputed testimony was that Mr. Valenzuela would not respond to conventional therapy and that he did not believe a court order backed by the contempt power would have any affect on Mr. Valenzuela. The Court concludes, therefore, that forcibly medicating Mr. Valenzuela is the only way the Government can restore him to competency. Because involuntary medication is necessary to further the governmental interests in this case, this factor favors the Government.

Fourth, the Court must determine if, in Mr. Valenzuela's case, administering antipsychotic drugs is in his best medical interests. Dr. Fiszbein characterized the Court's task as balancing the risks associated with the side effects of medication with the benefits of the medicine to Mr. Valenzuela. (Test. Dr. Fiszbein.) Given Mr. Valenzuela's unknown medical history it is unclear whether he will exhibit any side effects as a result of taking medication. Both doctors did testify, however, that they regularly prescribe antipsychotic drugs to treat patients with the same psychosis as Mr. Valenzuela. Though neither doctor could guarantee that the drugs would completely eliminate Mr. Valenzuela's delusions, the Court finds that administering antipsychotic medication to Mr. Valenzuela is in his best medical interests because the medicine could potentially cure his psychosis or at least allow him to more ably assist counsel in his own defense. The Court concludes, therefore, that the administration of antipsychotic drugs to Mr.Valenzuela is medically appropriate.

5

The Court concludes that all four parts of the *Sell* test weigh in favor of the Government.

**IT IS ORDERED** that the Government's motion to involuntarily medicate is hereby **GRANTED**.

_____
ROBERT C. BRACK
**UNITED STATES DISTRICT JUDGE**